IN RE ESTATE OF E. DALE LAWRENCE, deceased.
(Petition of Marie Rolfing for probate of lost will)

MARIE ROLFING, appellant, v. H. J. HARVEY, administrator, and
HEIRS-AT-LAW, appellees.

No. 49892

(Reported in 100 N.W.2d 645)

JANUARY 12, 1960.

Larson & Carr, of Charles City, for appellant.

A. C. Campbell and Robert J. Eggert, both of Charles City, for appellees.

GARFIELD, J.—Plaintiff, Marie Rolfing, filed her petition in probate seeking to establish and have admitted to probate an alleged lost will of E. Dale Lawrence, deceased, made shortly before July 13, 1957, in which she was sole beneficiary. The administrator and heirs-at-law defended. Following trial to the court without a jury relief was denied and plaintiff has appealed.

Dale Lawrence, a resident of Charles City, died there August 13, 1957, about one year and nine months before the trial hereof. June 21, 1957, his wife, Myrtle, predeceased him. They had no children. Plaintiff lives in Cedar Rapids. Her husband was a nephew of Myrtle. Dale was friendly with the Rolfings and visited them at least three times after Myrtle died.

July 13, 1957, Dale wrote a letter with pen, mailed from Charles City, in an envelope addressed to plaintiff, which read:

"Dear Folks: * * * Marie I changed my insurance policy over .to you so you will get $2500.00 if I pass away. This will pay my funeral expenses and leave you something. *I also drew up a will and left my estate to you.* This will not be too much but there should be something left. I will be thru Cedar Rapids next week some day and I will see you then. Love /s/ Dale."

The sentence we have italicized is the strongest evidence, assuming its admissibility, in support of the petition. Myrtle had been beneficiary of the insurance policy. August 6, 1957, Dale wrote the Rolfings another letter, enclosing the insurance policy, which read:

"Dear Folks: I am enclosing my insurance policy which has the beneficiary changed to you so if anything happens to me you can collect. I am busy making the Fairs and working in between times but I will soon be down your way. I sent Barbara a folder from up in Minnesota, hope she got it all O.K. Love to you all, /s/ Dale."

Barbara, age 11, is a daughter of plaintiff.

Plaintiff testified she did not recall Dale ever spoke to her about drawing up the will. Dale visited in the home of Lillian Hart at least four times after his wife died. She said, "Every time he came he spoke of Marie Rolfing and said she had been the nicest to them and she was to get everything he had." The witness added that decedent did not say he had made a will, just that he was leaving everything to Marie.

Plaintiff's mother-in-law, Myrtle's sister, testified she talked to and had letters from Dale after his wife's death but he said nothing about a will. Also that she did not recall any of Dale's relatives, except one, visiting Dale and he was not as careful as he could have been about a place for his papers. Myrtle's brother said Dale visited him after his wife's death and he was with Dale in the hospital most of the last 24 hours he lived but nothing was said at any time about his having made a will. The man who assisted Dale in changing the beneficiary of his insurance policy, a long-time friend, testified he recalled no talk in regard to a will.

Aside from the above testimony there is a strong showing by both sides that thorough search and investigation were made for a will or evidence thereof. Search was made by six different

persons, including two attorneys. Dale's safe-deposit box in a bank, a metal box in his home, his desk, the entire home, garage and automobile were carefully searched. Books and magazines were gone through leaf by leaf. Inquiry was made of all attorneys in Charles City and at least two from other towns. The administrator wrote all Dale's many friends for whom he could find an address regarding a will. The administrator who was Dale's first cousin, as well as several persons in sympathy with plaintiff, evidently made a sincere and diligent effort to unearth some evidence of a will. None was found.

We do not consider some offered testimony by plaintiff and, particularly, her husband, of conversations with decedent because defendants' objection to their competency under section 622.4, Code, 1958, the dead man statute, was obviously good. We may say, however, the testimony referred to, if considered, would add little to plaintiff's case.

I. The first of two assigned errors is that the court erred in holding the evidence insufficient to establish due execution and contents of the lost will. It is argued decedent's written and oral declarations are sufficiently clear, satisfactory and convincing to establish both due execution and contents of the will.

As plaintiff seems to concede, she must prove her case by evidence that is clear, satisfactory and convincing. It need not, however, be free from doubt. Goodale v. Murray, 227 Iowa 843, 856, 868, 869, 289 N.W. 450, 456, 462, 126 A. L. R. 1121, 1130, 1131, 1138, and citations: Iowa Wesleyan College v. Jackson, 249 Iowa 91, 95, 96, 86 N.W.2d 126, 129, and citations; Annotation, 126 A. L. R. 1139, 1141–1143; 57 Am. Jur., Wills, sections 981–983; 95 C. J. S., Wills, section 419 ("Stringent requirements for proof of lost or destroyed wills are imposed to avoid fraud, and the court should proceed with extreme care in the matter of proving a lost will, * * *.").

It is important to keep in mind that this is a probate action tried as one at law without a jury. It is not reviewable de novo here but only upon the errors assigned. The trial court's decision on the facts has the force and effect of a jury verdict. It was for the trial court to determine the credibility of witnesses and weight of the evidence. It follows that the decision must stand unless plaintiff is entitled as a matter of law to prevail or,

stated in another way, unless she would have been entitled to a directed verdict if trial had been to a jury. Our problem is not whether the evidence is such as to permit a decision in favor of plaintiff but whether it is so persuasive as to require such a decision. We have frequently pointed out, even where the burden of proof is satisfied by a preponderance of evidence, that in the absence of an admission by his adversary it is not often that one who had the burden establishes his claim as a matter of law.

See in support of the views just stated: Roth v. Headlee, 238 Iowa 1340, 1342, 1343, 29 N.W.2d 923, 924, and citations; Davis v. Knight, 239 Iowa 1338, 1342, 1343, 35 N.W.2d 23, 24-26, and citations; Ruble v. Carr, 244 Iowa 990, 993, 59 N.W.2d 228, 230, and citations; Dougherty v. Sioux City, 246 Iowa 171, 191, 192, 66 N.W.2d 275, 286, and citations; Iowa Wesleyan College v. Jackson, supra.

Davis v. Knight, supra, cites many authorities for the proposition that where the appellant in a law case contends he was entitled to a directed verdict the evidence must be construed in the light most favorable to the trial court's judgment. To like effect are Ruble v. Carr, supra (at page 994 of 244 Iowa, page 231 of 59 N.W.2d); Jackson Wholesale Florists v. Schappaugh Floral, 246 Iowa 1189, 1192, 70 N.W.2d 154, 156; Curtis v. Wilkins, 248 Iowa 1314, 1318, 85 N.W.2d 546, 548.

We think no authority can be cited that supports plaintiff's first assigned error. Certainly none has been called to our attention.

Plaintiff was required to prove by clear, satisfactory and convincing evidence (1) due execution and former existence of the alleged will, (2) it has been lost and could not be found after diligent search, (3) the presumption of its destruction by decedent with intention to revoke it, arising from its absence at death, has been rebutted, and (4) contents of the will. Goodale v. Murray, supra, 227 Iowa 843, 856, 857, 289 N.W. 450, 456, 457, 126 A. L. R. 1121, 1130, 1131, and citations. See also 95 C. J. S., Wills, section 419; 57 Am. Jur., Wills, sections 981-983.

Only the first and fourth requirements need be considered. We are not persuaded due execution and former existence or contents of the alleged will have been established by the requisite degree of proof—certainly not as a matter of law. Sub-

stantially the only evidence of the first and fourth propositions is the declaration in decedent's letter, "I also *drew up* a will and left my estate to you" (emphasis added), and his oral declarations that Marie was to get everything decedent had, without mention of a will.

At least the written declaration was made after it is claimed the will was executed. As stated, the petition alleges the will was made shortly before the date of the letter. We have never held the contents of a lost will may be established by declarations of the alleged testator. And our latest decision on the subject expressly refrains from passing upon the admissibility or competency of post-testamentary declarations for such purpose. Goodale v. Murray, supra, at page 864 of 227 Iowa, page 460 of 289 N.W., page 1136 of 126 A. L. R.

We have held evidence of declarations of the testator admissible on the issue of due execution of the will. Scott v. Hawk, 105 Iowa 467, 75 N.W. 368; Nixon v. Snellbaker, 155 Iowa 390, 136 N.W. 223; Goodale v. Murray, supra.

In Scott v. Hawk the subscribing witnesses were dead and the genuineness of their signatures was shown but not that of the mark of testator. The trial court directed a verdict against proponent because due execution was not shown. A new trial was then granted on the ground of newly discovered evidence of an attorney that he had shown the will to testator, the latter examined it carefully and pronounced it his will. We affirmed the order for new trial and observed that since the subscribing witnesses were dead, other evidence of execution was admissible and testator's declaration was convincing evidence thereof.

In Nixon v. Snellbaker, supra, the will was written and signed by testatrix. The witnesses were out of the state and testified by deposition that their signatures and that of testatrix were genuine but they did not recall the signing. We held it was not error to admit evidence of declarations of testatrix, on the issue of due execution, that she had written and signed the will and had the witnesses sign as such. We further held, however, due execution of the will conclusively appeared without evidence of the declarations.

In Goodale v. Murray, supra, one subscribing witness was dead but the survivor testified fully as to execution of the lost

will. We held evidence of what testator said at the time of and subsequent to execution was admissible on that issue and affirmed the trial court's establishment of the will.

In the Scott, Nixon and Goodale cases there was substantial evidence of execution of the will other than declarations of testator. The Scott and Nixon decisions do not involve a lost will. In each case there was no question as to the existence of the will. None of these precedents entitles plaintiff to a reversal on the ground due execution and former existence of the alleged lost will here are shown by the requisite degree of proof.

It is to be noticed the letter relied upon does not state decedent had made or executed a will or that his signature thereto had been "witnessed by two competent persons" as required by section 633.7, Codes, 1954, 1958. It merely says "I also *drew up* a will and left my estate to you." Quite in point here is In re Estate of Harter, 229 Iowa 238, 248, 294 N.W. 357, 359, which holds a will was not properly executed where the witnesses did not see testator sign and he merely told them "he had prepared his will" and would like them to sign it as witnesses. The opinion points out it would require resort to speculation and conjecture to infer or presume that testator's statement was the equivalent of saying he had signed the instrument as his will and now acknowledged such signature so the witnesses might witness it.

An annotation in 62 A. L. R.2d 855, 876, on "Admissibility of testator's declarations upon issue of genuineness or due execution of purported will" states:

"It is difficult to lay down any general rule on the question of the admissibility of the testator's declarations to prove due execution of the will. In some cases the declarations have been held admissible, and in others inadmissible. ·

"It seems, however, that while such declarations cannot of themselves take the place of the required proof of due execution, they may be admissible in corroboration of other evidence for or against the due execution of the will. * * *

"The mere vague declarations of testators that they have made their wills can never, of course, standing alone, supply proof of due execution." (Citations)

312

95 C. J. S., Wills, section 399, page 304, says that, except in some jurisdictions, declarations of the alleged testator are admissible to prove the former existence and contents of the will. "However, they are admissible as, and only as, corroborative of other evidence." Id., section 419a, page 347, states: "Declarations of the testator * * * are insufficient in and of themselves to prove any of the ingredients essential to establish a lost will."

57 Am. Jur., Wills, section 986, says: "The courts distinguish between the competency and the sufficiency of the declarations of the testator as proof of the contents of a lost will, and hold that the contents of a lost will cannot be proved solely by the declarations of the testator." Id., section 979 is to like effect.

The annotation to Goodale v. Murray, supra, 227 Iowa 843, 289 N.W. 450, 126 A. L. R. 1121, commencing at 1139, states that admissibility of declarations of the testator to prove the contents of an alleged lost will is generally, but not universally, recognized (page 1149). Also that express language indicating something more than such declarations must be shown is occasionally found in the decisions (page 1158). "And in several instances it has been held that since the only evidence as to the contents of the alleged lost will in question consisted of declarations by the testator * * *, the evidence was insufficient to justify the establishment of the instrument or its admission to probate" (page 1159).

Returning to our own precedents, In re Will of Dunahugh, 130 Iowa 692, 696, 107 N.W. 925, 926, says, "Now, the fact of a will cannot be proved merely by evidence of statements or declarations on the part of the decedent, to the effect that he had made a will."

In re Will of Brown, 143 Iowa 649, 661, 120 N.W. 667, 671, cites In re Will of Dunahugh, supra, with approval and adds: "Whether the instrument was a will was a question to be determined from the contents. The declarations of the testator were evidence that the testator believed the instrument to be a will and that he intended it as such. Notwithstanding such belief, its provisions might as a matter of law fall short of constituting a will. The belief of the testator that the instrument was a will would not constitute it such. In a legal sense, therefore, his declaration of such belief would not be evidence that it was such.

Whether the instrument was a will in a legal sense must be determined from its contents, * * *."

In the Brown case, supra, the contestants-appellants alleged there was a lost will executed after that offered for probate by the proponent which revoked the earlier instrument. The contestants moved for a directed verdict on the ground the execution of the later will, with its revoking clause, was shown by uncontradicted evidence. We held, "This contention of appellants is so clearly untenable that we will not dwell upon it at great length" (page 654 of 143 Iowa). What is said at pages 654, 655 of the Iowa Report supports our holding here.

In re Estate of Thorman, 162 Iowa 237, 239, 144 N.W. 7, 8, Ann. Cas. 1916B 484, states: "To establish a lost will or prove its contents, the evidence must be of a very clear and satisfactory character. [Citations] Something more than the declarations of the testator is essential to accomplish this. In re Will of Dunahugh, 130 Iowa 692; In re Will of Brown, supra."

█ Further consideration of the authorities on this subject seems unnecessary. We think plaintiff is not entitled to a reversal on the ground the trial court erred in holding the evidence insufficient to establish due execution and contents of the alleged will. The result is of course unfortunate for plaintiff. However, we feel it would be an unwise and perhaps dangerous precedent to hold, in effect, that on such evidence as there is here plaintiff is entitled as a matter of law to have established and admitted to probate a will in which she is sole beneficiary. Legal heirs should not be disinherited unless the intent to do so is evidenced in the manner required by law. See as somewhat in point Brandt v. Schucha, 250 Iowa 679, 695, 696, 96 N.W.2d 179, 189.

The trial court seems to have concluded that although decedent intended to make a will leaving his property to plaintiff he never actually did so. There is reasonable support for this conclusion. It is strange that if, as plaintiff alleges, a will was duly executed within about a month before decedent's death, some evidence of its execution was not obtained in the year and nine months before the trial, notwithstanding the careful investigation made by several persons. There is no suggestion that any will has been suppressed by anyone.

II. Plaintiff's second assigned error is that the court erred in holding "to establish a lost will on the evidence before the court would amount to admitting the letter, which is unwitnessed, as the will of decedent." The quoted language is from the trial court's conclusions of law. It forms no part of the judgment proper. In argument it is said the letter was not offered for probate as a will but as proof, by way of an admission, of the execution and contents of the will referred to in the letter.

It does not appear the trial court misapprehended the purpose for which the letter was offered. The soundness of the quoted reasoning may perhaps be debatable but plaintiff has not demonstrated its unsoundness. In any event it does not call for a reversal. The finding we have upheld that the evidence is insufficient to establish the execution and contents of a lost will adequately supports the judgment. If the judgment is right, and we think it is, any error in the Judge's reasoning of which complaint is made is not prejudicial. In re Estate of Hale, 231 Iowa 1018, 1024, 2 N.W.2d 775, 779, and citations; Independent School District of Cedar Rapids v. Iowa Emp. Sec. Comm., 237 Iowa 1301, 1311, 25 N.W.2d 491, 497, 498; Board of Park Commissioners v. Marshalltown, 244 Iowa 844, 855, 58 N.W.2d 394, 400, and citations; 5B C. J. S., Appeal and Error, section 1789. —Affirmed.

All JUSTICES concur.